**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION**

| | |
|---|---|
| SEPM MISSOURI SERVICES, P.C., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RIGHTCHOICE MANAGED CARE, INC., D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD OF MISSOURI, et al.,<br><br>Defendants. | Civil Action No. 4:26-cv-01088-SRC |

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**

Defendants RightCHOICE Managed Care, Inc., d/b/a Anthem Blue Cross and Blue Shield of Missouri ("RightCHOICE"), Healthy Alliance Life Insurance Company ("HALIC"), and HMO Missouri, Inc. ("HMO MO") (collectively, "Defendants" or "Anthem Missouri"), by and through undersigned counsel, respectfully move this Court to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. As set forth more fully below, Plaintiffs' claims are preempted by federal law, fail as a matter of law, and are inadequately pled.

**INTRODUCTION**

Plaintiffs are out-of-network healthcare providers who were paid by Anthem Missouri for their services, but they are unhappy with the amount of payment received. ECF 21 ("Am. Compl.") ¶¶ 12-15. Unable to point to any contract entitling them to higher rates, they now ask this Court to

rewrite the terms of the health benefit plans of Defendants' members to which Plaintiffs are not parties. This Court should decline the invitation.

Plaintiffs' claims fail at the threshold for multiple independent reasons. The fundamental problem is that Defendants owe no independent legal duty to Plaintiffs. The obligations regarding payment arise from the health plans themselves—contracts between Defendants and their members to which Plaintiffs are strangers. Plaintiffs cannot manufacture a duty through artful pleading of state-law claims that are either preempted by federal law or fail as a matter of well-established Missouri law. The Complaint fails for several additional reasons beyond this fatal flaw, as well.

First, a significant portion of Plaintiffs' claims—nearly a third—are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* *See* ECF 1 (Notice of Removal) at 2. Plaintiffs' claims cannot avoid ERISA's comprehensive remedial scheme, as the Eighth Circuit has consistently held that state law claims are preempted when they seek to recover benefits under ERISA-governed plans.

Second, Plaintiffs lack standing and privity to enforce obligations under health plans to which they are not parties. Plaintiffs have not alleged valid assignments of benefits with the specificity required to establish standing, nor have they alleged facts sufficient to establish third-party beneficiary status. *See* Am. Compl. ¶ 70.

Third, to the extent Plaintiffs rely on the Emergency Medical Treatment and Labor Act ("EMTALA") to support their reimbursement claims, EMTALA provides no private right of action against insurers. EMTALA's duties run exclusively to participating hospitals, and non-hospital providers like Plaintiffs cannot use EMTALA to compel insurer reimbursement at their preferred rates.

Fourth, Anthem Missouri is an improper party with respect to thousands of claims identified as "Non-Anthem Host Claims." These claims involve patients whose health plans were issued by non-party "Blue" entities in other states, and Anthem Missouri—as the "host plan" under the BlueCard program—does not fund, insure, or underwrite these claims.

Fifth, and finally, each of Plaintiffs' remaining causes of action independently fails to state a claim. The prompt pay claim (Count I) fails because Defendants timely paid or denied Plaintiffs' claims, and Missouri's prompt pay statute addresses timeliness of payment, not payment amounts. The breach of implied contract claim (Count II) fails because no contract—express or implied—exists between the parties, as Plaintiffs' unilateral expectation of payment at "reasonable and customary rates" does not constitute the offer, acceptance, and meeting of the minds required under Missouri law. The quasi-contractual claims for unjust enrichment and quantum meruit (Counts III & IV) fail because the patients received the benefit of medical services, not Defendants. Finally, Plaintiffs' request for injunctive relief (Count V) is improper because Plaintiffs have an adequate remedy at law rendering equitable relief unavailable.

For these reasons, the Court should dismiss Plaintiffs' Amended Complaint in its entirety.

## STATEMENT OF FACTS

Plaintiffs SEPM Missouri Services, P.C. ("SEPM"), Southeast Emergency Physicians of Memphis Associates, P.C. ("SEP Memphis"), Southeastern Emergency Physicians of Memphis, LLC ("Southeastern EPM"), and Missouri Emergency Services, P.C. ("MES") are healthcare providers that furnish emergency medical services to hospitals in Missouri. Am. Compl. ¶¶ 1-4, 18. Plaintiffs allege that at all times material to this action (January 1, 2024 to present), they did not have written contracts with Anthem Missouri to establish the rates of reimbursement for the emergency medical services they provided and thus claim to be out-of-network non-participating

providers. *Id.* ¶ 12. Plaintiffs allege that Anthem Missouri erroneously processed and adjudicated their claims as in-network claims and paid them at discounted rates applicable to participating providers. *Id.* ¶ 13. Plaintiffs contend that they should have been paid at "reasonable and customary rates" for out-of-network providers. *Id.* ¶ 15.

On or about June 24, 2026, Plaintiffs, through counsel, provided an unredacted Claims Spreadsheet to Anthem Missouri which identifies 30,111 healthcare reimbursement claims which Plaintiffs allege are at issue in this action[1]. After reviewing the Claims Spreadsheet, to date, Anthem Missouri has determined that (i) at least over 9,000 of the healthcare reimbursement claims pertain to members with health plans governed by ERISA and (ii) over 8,900 claims are for members of health benefits plans not administered by Anthem. *See* Ex. A (Declaration of Dianna Moeller (hereinafter "Moeller Decl.") ¶¶ 5-6).[2] Plaintiffs bring five causes of action, *see* Am. Compl. ¶¶ 44-89, each of which fails to state a claim upon which relief can be granted.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept well-pleaded factual

---

[1] This spreadsheet was marked "For Settlement Purposes Only." While Anthem asserts that it is incumbent on Plaintiffs to identify the specific claims at issue in order to satisfy the minimum pleading standards under FRCP 8, Anthem is not attaching the spreadsheet to this motion. Regardless, Anthem has reviewed the spreadsheet and as discussed below, has highlighted the results of its review as it relates to whether the claims at issue are subject to ERISA preemption or if the claims are for members of health benefits not administered by Anthem.

[2] As stated in Anthem Missouri's Notice of Removal, at the time Anthem Missouri removed this case to this Court, it had identified over 140 claims that pertained to members with health plans governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8902(m)(1). The Amended Complaint "expressly excludes" from the alleged "Underpaid Claims" any claims that may be covered by FEHBA.

allegations as true, it need not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

## ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE PREEMPTED BY ERISA

Nearly one-third of Plaintiffs' claims must be dismissed because they are completely preempted by ERISA. Of the 30,111 claims identified in Plaintiffs' Claims Spreadsheet, at least 9,144 pertain to members enrolled in ERISA-governed health plans. *See* Ex. A (Moeller Decl. ¶ 5). ERISA governs "any employee benefit plan" established to provide "medical, surgical, or hospital care or benefits." 29 U.S.C. §§ 1002(1), 1003(a)(1). The health plans covering these members constitute such "employee benefit plans."

ERISA's preemptive force cannot be avoided by artful pleading. The doctrine of complete preemption converts state-law causes of action into federal claims subject to ERISA's exclusive remedial scheme. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004); *Prudential Ins. Co. of America v. National Park Medical Center, Inc.*, 413 F.3d 897, 907 (8th Cir. 2005). Any state-law cause of action that "duplicates, supplements or supplants" ERISA's civil enforcement provision is completely preempted. *Noel v. Laclede Gas Co.*, 612 F. Supp. 2d 1051, 1058 (E.D. Mo. 2009).

That is precisely what Plaintiffs attempt to do here. Plaintiffs' claims for breach of implied contract, unjust enrichment, and quantum meruit all seek additional payment for services rendered to members of ERISA-governed health plans. *See* Am. Compl. ¶¶ 11, 52, 64, 79. Stripped of their state-law labels, these claims seek to enforce an obligation to pay benefits arising solely from ERISA-governed plans—the definition of preemption by § 502(a). Accordingly, the 9,144 claims involving ERISA-governed health plans are completely preempted and must be dismissed.

## II. PLAINTIFFS LACK STANDING AND PRIVITY TO ASSERT CLAIMS UNDER THE HEALTH PLANS

Plaintiffs' claims also independently fail because Plaintiffs are strangers to the contracts that govern the payment obligations at issue. Plaintiffs admit they "did not have written contracts with Anthem Missouri to establish the rates of reimbursement" for their services. Am. Compl. ¶ 12. The health plans at issue are contracts between Anthem Missouri and their members, not between Anthem Missouri and Plaintiffs. Plaintiffs attempt to overcome this defect by alleging they are entitled to recover through "the parties conduct and respective undertaking of obligations[.]" Am. Compl. ¶ 54. But these are "[t]hreadbare recitals of the elements of a cause of action" that fail under *Iqbal*. 556 U.S. at 678.

Plaintiffs do not attach any assignment of benefits, identify any specific plan member who assigned benefits, or allege whether the plans permit assignment. *See generally* Am. Compl. Similarly, any third-party beneficiary theory fails because under Missouri law, a third-party beneficiary must show the contract was made for the direct benefit of the third party, and "there is a strong presumption that the third party is not a beneficiary." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 971 (8th Cir. 2015). Without valid assignments or established third-party beneficiary status, Plaintiffs are strangers to the contracts between Anthem Missouri and their members. Their contract-based claims should be dismissed on this independent ground.

## III. EMTALA IS NOT A VALID PREDICATE TO BRING THIS ACTION

EMTALA's duties run exclusively to "participating hospitals," and its private right of action is similarly limited to claims against those hospitals. *See* 42 U.S.C. § 1395dd (outlining enforcement provisions against "participating hospitals"); 42 U.S.C. § 1395dd(d)(2) (expressly directing private right of action against "the participating hospital"); *Heimlicher v. Steele*, 442 F. Supp. 2d 685, 693 (N.D. Iowa 2006). Non-hospital providers therefore cannot use EMTALA to

compel insurer reimbursement. *See Air Evac EMS, Inc. v. USAble Mutual Insurance Company*, 931 F.3d 647, 650 (8th Cir. 2019) (federal emergency service statutes "do not provide a private cause of action" for providers against insurers); *see also Emergency Health Ctr. at Willowbrook, L.L.C. v. UnitedHealthcare of Texas, Inc.*, 892 F. Supp. 2d 847, 852 (S.D. Tex. 2012) (provider could not bring prompt pay claim against insurer based on EMTALA obligations).

Here, Plaintiffs imply that their EMTALA obligations require Defendants to pay at Plaintiffs' desired rates. *See* Am. Compl. ¶¶ 19-23. But EMTALA provides no private right of action against insurers, and Plaintiffs—as non-hospital emergency service providers—cannot bootstrap federal emergency care obligations into a claim for enhanced reimbursement. Accordingly, to the extent Plaintiffs rely on EMTALA or similar federal emergency care mandates to support their claims for reimbursement at "reasonable and customary" rates, those claims fail as a matter of law.

## IV. ANTHEM MISSOURI IS AN IMPROPER PARTY TO THIS ACTION FOR THOUSANDS OF CLAIMS

The Complaint is ripe for dismissal with respect to over 8,900 claims, as Plaintiffs are pursuing reimbursement from the wrong party. *See* Moeller Decl. ¶ 6. Anthem Missouri was not the third-party claims administrator for these claims, as the Patients for those claims had health benefits plans issued in separate states by non-party "Blue" entities. Pursuant to the BlueCard program for entities that belong to the Blue Cross Blue Shield Association, "Blue" members are able to obtain healthcare services while out of their "home plan" state. Anthem Missouri, as the "host plan," did not process, review, fund, insure, or underwrite these claims. *See Schoemann ex rel. Schoemann v. Excellus Health Plan, Inc.*, 447 F. Supp. 2d 1000, 1001 (D. Minn. 2006)(explaining that the host plan handles billing, "decisions regarding coverage continue to be made by the plan administrator, and not by the local affiliate."); *Park Ave. Aesthetic, P.C. v. Empire Blue Cross Blue*

*Shield & Groupfirst of Md., Inc.*, No. 19-cv-9761 (JGK), 2021 WL 665045, at *5–6 (S.D.N.Y. Feb. 19, 2021) (dismissing out-of-network provider claims against Empire holding that as the "host plan," lacking "total control over the benefits denial process," Empire was an improper party).

ERISA provides that "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." 29 U.S.C. § 1132(d). In construing the foregoing provision, courts have concluded that only a plan and/or plan administrator (in appropriate circumstances) are proper defendants in a suit to recover ERISA benefits. *See Harris v. SWAN, Inc.*, 459 F. Supp. 2d 857, 862 (E.D. Mo. 2005) ("Where a defendant is no position to pay out benefits to the plaintiff, the defendant is not the proper party to be sued."); *Jeffrey Farkas M.D., LLC v. Grp. Health, Inc.*, No. 18 Civ. 8535 (CM)(KHP), 2019 WL 657006, *8–9 (S.D.N.Y. Feb. 1, 2019); *Plastic Surgery Group, P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 469 (E.D.N.Y. Dec. 11, 2014) (dismissing plaintiff's claims for benefits for failing to allege United Healthcare Ins. Co. was a proper defendant, as "a claim for benefits pursuant to § 502(a)(1)(B) may only be asserted against the plan itself, the plan administrator, and the plan trustees."). Similarly, non-ERISA plans, while not governed by ERISA, adhere to comparable standards and protections to ensure participants receive adequate information and benefits, and to maintain fiduciary responsibility.

## V. PLAINTIFFS' PROMPT PAY CLAIM (COUNT I) FAILS

Plaintiffs' claim under Missouri's Prompt Pay Act ("MPPA") fails because the statute addresses the timeliness of claim decisions, not payment amounts. The MPPA requires health insurance companies to promptly pay, deny, or request additional information within specified time periods. *See* Rev. Stat. Mo. 376.383. As courts have explained, "the MPPA does not speak to

the veracity of amounts, only prompt payment or response." *Midwest Special Surgery, P.C. v. Anthem Ins. Cos.*, No. 4:09CV646 TIA, 2010 WL 716105, at *5 (E.D. Mo. 2010); *see also Schoedinger v. United Healthcare of Midwest, Inc.*, 557 F.3d 872, 875 (8th Cir. 2009).

Plaintiffs' MPPA claim fails because Defendants did exactly what the statute requires: they timely processed and paid Plaintiffs' claims. Plaintiffs do not—and cannot—allege that their claims were not initially paid or denied within the required time periods. To the contrary, Plaintiffs admit that "Anthem Missouri has already determined that these claims were covered and made initial payments." Am. Compl. ¶ 14. Plaintiffs' real complaint is that they disagree with the amount of payment received and believe they should have been paid at "reasonable rates customary for out-of-network providers" rather than in-network rates. Am. Compl. ¶ 15. But the MPPA does not guarantee providers their preferred rates; it simply requires timely processing of claims. *See Midwest Special Surgery*, 2010 WL 716105, at *5 ("the MPPA does not speak to the veracity of amounts, only prompt payment or response").

Because the MPPA addresses timeliness, not amount, and because Defendants timely processed Plaintiffs' claims, Count I should be dismissed for failure to state a claim.

## VI. PLAINTIFFS' BREACH OF IMPLIED CONTRACT CLAIM (COUNT II) FAILS

Plaintiffs' breach of implied contract claim also fails because there is no contract—express or implied—between Plaintiffs and Defendants. "There is no difference in legal effect between an express contract and one implied in fact." *Howland v. Truman Med. Ctr., Inc.*, 719 S.W.3d 98, 108 (Mo. Ct. App. 2025). And a contract only exists if there is "offer, acceptance, and bargained for consideration." *Mississippi Valley Equipment Company v. Killian*, 728 S.W.3d 505, 510 (Mo. Ct. App. 2025). Notably, the Eighth Circuit has recognized that "the insurers' policies with their *insureds* set forth the method and rates for the reimbursement of claims for services rendered by

both network providers and non-network providers." *32nd St. Surgery Ctr., LLC v. Right Choice Managed Care*, 820 F.3d 950, 956 (8th Cir. 2016) (emphasis added). In other words, the contracts that govern payment obligations are between Defendants and their members—not between Defendants and Plaintiffs.

Here, Plaintiffs admit they "did not have written contracts with Anthem Missouri to establish the rates of reimbursement" for their services. Am. Compl. ¶ 12. Unable to point to an express contract, Plaintiffs attempt to manufacture one by alleging an "implied contract" based on the parties' course of conduct—specifically, that "Anthem Missouri has undertaken to pay for services provided to Anthem Missouri's members" and that "Plaintiffs had a reasonable expectation and understanding, that Anthem Missouri would reimburse Plaintiffs . . . at a rate reflecting the reasonable and customary value of Plaintiffs' services." Am. Compl. ¶¶ 52, 54.

These allegations fall far short of establishing a contract. "A contract requires an objective manifestation of assent as expressed through offer and acceptance, and consideration." *STL Riverview Plaza LLC v. Metro. St. Louis Sewer Dist.*, 681 S.W.3d 290, 300 (Mo. Ct. App. 2023); *see also Crutcher v. MultiPlan, Inc.*, 22 F.4th 756, 768 (8th Cir. 2022). Plaintiffs do not allege that Defendants ever agreed to pay "reasonable and customary" rates—only that Plaintiffs expected such payment. But a unilateral expectation by one party does not create a contract. *Id.* More fundamentally, Plaintiffs' own allegations demonstrate the absence of a "meeting of the minds" on the essential term at issue: the rate of payment. Plaintiffs believe they are owed "reasonable and customary" out-of-network rates; Defendants processed the claims according to the terms of their health plans. This basic disagreement over payment terms negates any implied contract.

The absence of a contract between providers and insurers is not a gap in the law—it is the system working as designed. *See 32nd Street Surgery Center*, 820 F.3d at 956 (recognizing that

"the insurers' policies with their insureds set forth the method and rates for the reimbursement of claims"). As evidenced by the prior contract between SEPM and Anthem Missouri, *see* Compl. ¶ 24, providers who want guaranteed rates negotiate contracts directly with insurers. Providers who choose to remain out-of-network accept the rates determined by the health plans between insurers and their insureds. Plaintiffs made that choice. They cannot now ask this Court to impose a contract that does not exist. Count II should be dismissed.

## VII. PLAINTIFFS' QUASI-CONTRACTUAL CLAIMS (COUNTS III & IV) FAIL AS A MATTER OF LAW

Plaintiffs' quasi-contractual claims for unjust enrichment and quantum meruit fare no better. These claims fail for two independent reasons: (1) Defendants did not receive any benefit from Plaintiffs; and (2) Plaintiffs' own allegations of a contractual relationship bar quasi-contractual recovery.

First, Defendants did not receive a benefit from Plaintiffs. To establish unjust enrichment under Missouri law, a plaintiff must show the defendant received a benefit. *Femmer v. Sephora USA, Inc.*, No. 4:20 CV 676 JMB, 2021 WL 735685, at *10 (E.D. Mo. 2021). Similarly, a quantum meruit claim requires a showing that materials or services were provided to the defendant. *Northcon, Inc. v. Alpha Energy and Electric Inc.*, No. 4:18-00994-CV-RK, 2020 WL 1527162, at *4 (W.D. Mo. 2020). Courts across the country have consistently held that medical providers cannot bring unjust enrichment or quantum meruit claims against insurers because patient-subscribers—not insurers—receive the benefit of medical services. *See, e.g., Beth Wolf, APRN-BC LLC v. Cigna Health & Life Ins. Co.*, 733 F. Supp. 3d 1278, 1280 (S.D. Fla. 2024); *Mapsong PC v. Blue Shield of California Life and Health Ins. Co.*, 780 F. Supp. 3d 939, 945-46 (C.D. Cal. 2024); *Abira Medical Laboratories, LLC v. WellMed Medical Management, Inc.*, No. SA-24-CV-

00578-XR, 2024 WL 4756909, at *5 (W.D. Tex. Nov. 12, 2024). This makes sense: the insurer does not sit in the examination room or receive the medical treatment. The patient does.

Here, Plaintiffs concede that they rendered services to Defendants' members—not to Defendants. *See* Am. Compl. ¶¶ 18-21. Accordingly, Plaintiffs' medical services benefited the patients who received them, not the insurers who processed the claims. If Plaintiffs' theory were accepted, insurers would become guarantors of any provider's preferred rates simply because the insurer's members sought treatment. Because Plaintiffs cannot allege that Defendants received a direct benefit from Plaintiffs' services, these claims must be dismissed.

Plaintiffs' quasi-contractual claims fail for a second, independent reason: Missouri law does not allow quasi-contract recovery "when an express contract governs the subject matter for which recovery is sought." *32nd Street Surgery Center*, 820 F.3d at 956. This rule exists because quasi-contractual remedies are designed to fill gaps where no contract exists—not to supplement or override existing contractual arrangements. Yet in Count II, Plaintiffs allege an implied contract between the parties. *See* Am. Compl. ¶¶ 49-60. Plaintiffs cannot have it both ways: they cannot simultaneously claim that a contract exists (Count II) and that no contract exists (Counts III and IV). Accordingly, Counts III and IV should be dismissed.

## VIII. PLAINTIFFS' CLAIM FOR INJUNCTIVE AND DECLARATORY RELIEF (COUNT V) FAILS

Finally, Plaintiffs' request for injunctive and declaratory relief fails for multiple reasons.

First, injunctive relief is an extraordinary remedy available only when the movant has no adequate remedy at law. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). If plaintiffs obtained enforceable assignments of benefits from their patients, Plaintiffs could have an adequate remedy at law: monetary damages for any alleged underpayment. Because Plaintiffs

could be made whole through money damages in such circumstances, they are not entitled to the extraordinary remedy of an injunction.

Second, Plaintiffs' injunctive relief claim is entirely derivative of their other claims. Plaintiffs seek an injunction requiring Defendants to pay claims at "reasonable and customary rates," Am. Compl. ¶ 89, but this presupposes that Defendants have an obligation to pay such rates. As demonstrated above, Plaintiffs have failed to state any claim establishing such an obligation. A derivative claim for injunctive relief cannot survive when the underlying claims fail. *See Jameson v. State Farm Mut. Auto. Ins. Co.*, 871 F. Supp. 2d 862, 870 (W.D. Mo. 2012) ("A declaratory judgment action is not used where an adequate remedy already exists at law.")

Third, Plaintiffs' declaratory judgment claim is entirely duplicative of their other causes of action and serves no useful purpose. A declaratory judgment action "must declare a fixed right and accomplish a useful purpose." *Missouri Soybean Ass'n v. Missouri Clean Water Com'n*, 102 S.W.3d 10, 25 (Mo. 2003); *see also Jameson*, 871 F. Supp. 2d at 871 ("declaratory judgment action should lie 'only in cases where it could be of some practical convenience to the parties.'"). Here, if Plaintiffs prevail on any of their substantive claims, the Court will necessarily determine whether Defendants owe the amounts Plaintiffs claim. A separate declaration adds nothing. Count V should be dismissed in its entirety.

## CONCLUSION

Plaintiffs were paid for their services. They simply want more money. But desire does not create legal entitlement. Plaintiffs have no contract with Defendants entitling them to "reasonable and customary rates." Their state-law claims are either preempted by federal law or fail as a matter of well-established Missouri law. For all of the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety with prejudice.

Respectfully submitted,

By: *Kyle R. Gerlach*
Kyle R. Gerlach, Bar No. 76056 (MO)
**TROUTMAN PEPPER LOCKE LLP**
7456 Jager Court, Suite 7456-B
Cincinnati, OH 45230
Telephone: 513-875-6304
kyle.gerlach@troutman.com

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2026 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ Kyle R. Gerlach*
Kyle R. Gerlach